UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number: 4:03cv01115 TCM |
| ) | |
| ST. LOUIS BOARD OF POLICE ) | |
| COMMISSIONERS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This 42 U.S.C. § 1983 action is before the Court[1] on the motion of Defendants[2] to dismiss the second amended complaint filed by plaintiff, Richard Harris, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).[3] Specifically, Defendants argues that they are a "State" within the meaning of the Eleventh Amendment and are, therefore, immune from suit in Federal Court. [Doc. 45]

---

[1]This case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]Defendants are the St. Louis Board of Police Commissioners: Mary Nelson; Michael Quinn; Susan Rollins; Bartholomew Saracino; and Francis G. Slay, Mayor of the City of St. Louis.

[3]Rule 12(h)(3) reads as follows: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

## Background

Plaintiff alleges in his second amended complaint that he has been subjected to a long-standing pattern of abuse at the hands of a few members of the St. Louis Police Department (the Department).

Specifically, he alleges that he was leaving a liquor store in May 1996 when he was approached, accosted, and assaulted by two officers of the Department, Corby Campbell and McMurphy (first name not provided). (Compl. ¶ 7.) The two officers searched his person without probable cause and with the purpose of harassing and humiliating him. (Id. ¶ 8.) When Plaintiff asked the officers why he was being detained, he was told to "get the hell away from here." (Id. ¶ 9.)

In November 1997, Officers Campbell and Mark McMurray stopped Plaintiff's vehicle, told him to get out of the car, assaulted him, used excessive force against him, and illegally searched him, again with the purpose of harassing and humiliating him. (Id. ¶ 10.) Officers Scanlon and Campbell engaged in the same behavior in June 1997 when stopping Plaintiff's vehicle. (Id. ¶¶ 11, 12.) Additionally, Campbell made racial remarks and derogatory remarks about Plaintiff's combat-related disability. (Id.) That same month, Officers Campbell and McMurray unlawfully detained Plaintiff, assaulted him, used excessive force against him, and illegally searched him for the same above-described purposes. (Id. ¶ 13-14.) The two officers also made unfounded statements regarding Plaintiff's involvement with guns and drugs, with full knowledge that Plaintiff had never been arrested, charged, or found guilty of any charges involving guns or drugs. (Id. ¶ 15.)

In August 2000, Officers Campbell and McMurray stopped Plaintiff's vehicle, told him to get out of the car, assaulted him, used excessive force against him, handcuffed him, and illegally searched him. (Id. ¶ 16.) During the search, Campbell took the keys to Plaintiff's home and the keys to his car. (Id. ¶ 17.) Campbell searched Plaintiff's home without a search warrant and without his permission. (Id. ¶ 18.) Plaintiff was then arrested by the two officers without being told why. (Id. ¶ 20.) While transporting Plaintiff, Campbell reached into the back seat, grabbed Plaintiff by the throat, and told him, "we got your black ass now." (Id. ¶ 21.) The officers also threatened Plaintiff and made racial and remarks and derogatory remarks about his disability. (Id. ¶ 22.)

Seeking only money damages, Plaintiff sued the Board members under three § 1983 counts and two state law causes of action.

Defendants argue in support of their Motion to Dismiss that the St. Louis Board of Police Commissioners (the Board) is an agency of the State of Missouri; consequently, because the State of Missouri enjoys Eleventh Amendment immunity from suits in federal court, the individual St. Louis Board of Police Commissioners are also immune from suit. (Defs. Mtn at 1.) In support of their motion, Defendants cite **Smith v. State of Missouri**, 152 S.W.3d 275 (Mo. 2005) (en banc), which held that the Board is an "agency of the state" for purposes of Mo.Rev.Stat. § 105.711.2(1) and its members are therefore entitled to coverage under the State Legal Expense Fund (the Fund) in defending lawsuits arising out of actions they had taken in their official capacities. Plaintiff counters that the **Smith** case

did not confer Eleventh Amendment immunity on the Board, but only requires the Fund to pay litigation costs when the Board is named as a defendant.

## Discussion

Under Rule 12(h)(3), "either the court or any party may raise an issue of subject-matter at any time, and the Eleventh Amendment is regarded, at least for this purpose, as going to subject-matter jurisdiction." **Fromm v. Commission of Veterans Affairs**, 220 F.3d 887, 890 (8th Cir. 2000).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the United States by Citizens of another State . . ." U.S. Const. Amend. XI. "It has been interpreted to provide a state with immunity from suit in federal court by citizens of other states and by its own citizens." **Skelton v. Henry**, 390 F.3d 614, 617 (8th Cir. 2004). See also **Doe v. Nebraska**, 345 F.3d 593, 597 (8th Cir. 2003) (same). This immunity does not bar an award of prospective relief, see **Skelton**, 390 F.3d at 617; however, Plaintiff has asked only for monetary relief for past injuries. This immunity also "does not bar damage claims against state officials acting in their personal capacities." **Murphy v. State of Arkansas**, 127 F.3d 750, 754 (8th Cir. 1997). Plaintiff does not specify whether she is suing the Board members in their personal or their official capacities. "[A]bsent a clear statement that officials are being sued in their personal capacities, '[the courts] interpret the complaint as including only official-capacity claims.'" **Id.** (quoting Egerdahl v. Hibbing Comm. College,

72 F.3d 615, 619 (8th Cir. 1995)) (alterations added). Plaintiff is suing under § 1983; however, "[§] 1983 does not override Eleventh Amendment immunity." **Hadley v. North Arkansas Comm. Tech. College**, 76 F.3d 1437, 1438 (8th Cir. 1996) (alteration added).

Although "[t]he Eleventh Amendment encompasses not only actions where the state is actually named as a defendant, but also certain actions against state instrumentalities[,]" **Becker v. University of Nebraska**, 191 F.3d 904, 908 (8th Cir. 1999) (alterations added), not all state-connected agencies, entities, or officials are protected by the Eleventh Amendment, see **Sherman v. Board of Curators of Univ. of Missouri**, 16 F.3d 860, 862 (8th Cir. 1994). See also **Mt. Healthy City School Dist. Board of Education v. Doyle**, 429 U.S. 274, 280 (1977) (holding that the Eleventh Amendment bar to suit in federal courts extends to states and state officials in appropriate circumstances, but not to counties and similar municipal corporations). "Courts considering an entity's claim of eleventh amendment immunity must therefore determine 'whether the suit is in reality a suit against the state.'" **Sherman**, 16 F.3d at 863 (quoting Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985)). In making this determination, "[c]ourts typically look at the degree of local autonomy and control and *most importantly* whether the funds to pay an award will be derived from the state treasury." **Id.** (quoting Greenwood, 778 F.2d at 453) (emphasis and alteration added). See also **Regents of the Univ. of California v. Doe**, 519 U.S. 425, 430 (1997) ("Of course, the question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any

evaluation of the relationship between the State and the entity or individual being sued."). "Ultimately, of course, the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law." **Id.** at 430 n.5.

The Missouri Supreme Court recently summarized the relationship between the State and the Board as follows:

> The members of the Board, other than the mayor of St. Louis ex-officio, are appointed by the governor with the advice and consent of the senate, and they receive their commissions from the governor. It is also the governor who is authorized by statute to remove any commissioner for misconduct in office. In addition, the general assembly has imposed upon the Board numerous requirements pertaining to the Board's duty to establish and employ a "permanent police force," including those that establish the qualifications of police officers, the number of police officers of each rank that the Board may employ, and the maximum amount that officers of each rank can be paid. Further, the Board is required to make its records available for inspection by the general assembly or any committee thereof. In all these respects, the Police Board is answerable to the state rather than the city.
>
> In fact, the general assembly has expressly prohibited the City of St. Louis and its officials from presuming to exercise authority or control over the Board or the Police Department. . . .

**Smith**, 152 S.W.3d at 278 (interim statutory citations omitted). This relationship makes the Board "'an agency of the state,' as that term is used in section 105.711.2(1), *as opposed to a local or municipal agency*." **Id.** (emphasis added). Section 105.711.2 provides, in relevant part, that: "Moneys in the state legal expense fund shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent

jurisdiction against (1) The State of Missouri, or any agency of the state . . ." The court rejected the argument that the Board was not an agency of the state because the City of St. Louis paid the salary of the police officers, noting that its conclusion to the contrary was "dictated . . . by the express language of the statute: St. Louis police officers are both officers of the City and officers of the state. As officers of the state they are covered by the [Fund]." **Id.** at 279 (citing Mo.Rev.Stat. § 105.711.2(2)[4]) (alteration added). Thus, **Smith** makes clear that the State controls the Board members and pays for any judgment against them.

The importance of the control and payment factors in determining that the Board is a state agency for Eleventh Amendment immunity purposes is further strengthened by the Eighth Circuit Court of Appeals' decision in **Sherman** listing nine factors delineated by the Third Circuit Court of Appeals in **Kovats v. Rutgers, The State University**, 822 F.2d 1303, 1307 (3rd Cir. 1987), to consider when determining whether an entity shares a state's Eleventh Amendment immunity. These factors are:

> (1) local law and decisions defining the status and nature of the agency involved in its relation to the sovereign; (2) most importantly, whether the payment of the judgment will have to be made out of the state treasury; (3)

---

[4]Section 105.711.2 reads, in relevant part:
Moneys in the state legal expense fund shall be available for the payment of any claim or any amount require by any final judgment rendered by a court of competent jurisdiction against
. . .
(2) Any officer or employee of the state of Missouri or any agency of the state, including, without limitation, elected officials, appointees, members of state boards or commissions . . . upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state, or any agency of the state. . . .

whether the agency has the funds or the power to satisfy the judgment; (4) whether the agency is performing a governmental or proprietary function; (5) whether it has been separately incorporated; (6) the degree of autonomy over its operations; (7) whether it has the power to sue and be sued and to enter into contracts; (8) whether its property is immune from state taxation; and (9) whether the sovereign has immunized itself from responsibility for the agency's operations.

**Sherman**, 16 F.3d at 865 n.6. Considering these factors in the context of the control established by Missouri statutes over the Board, thus minimizing the Board's autonomy, and the **Smith** holding that the funds to pay any judgment against the Board members come from the state treasury compels a conclusion that the Board members are entitled to Eleventh Amendment immunity in the instant case.

## Conclusion

Plaintiff seeks monetary relief from the members of the St. Louis Board of Police Commissioners in their official capacity under § 1983 and two state law causes of actions. The Board members are entitled to Eleventh Amendment immunity from these claims in federal court. Accordingly,

**IT IS HEREBY ORDERED** that the St. Louis Board of Police Commissioners' Motion to Dismiss is **GRANTED**. [Doc. 45]

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine [Doc. 41] is **DENIED** as moot.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of May, 2005.